**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
**PLAZA MOTORS OF BROOKLYN, INC., et al.,**

                                        **Plaintiffs,**                          **REPORT AND**
                                                                                 **RECOMMENDATION**

                  **-against-**
                                                                                 **19-CV-6336 (LDH)**
**ORLANDO RIVERA,**

                                        **Defendant.**
--------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

           Plaintiffs Plaza Motors of Brooklyn, Inc. ("Plaza Motors"), Plaza Automotive, Ltd. d/b/a

Plaza Kia ("Plaza Kia"), Crystal Bay Imports, Ltd. d/b/a Acura of Brooklyn ("Acura of

Brooklyn"), and Plaza Oldsmobile, Ltd. d/b/a Plaza Toyota ("Plaza Toyota") (collectively,

"plaintiffs") commenced this diversity action against Orlando Rivera ("Rivera" or "defendant")

on November 8, 2019, alleging ten causes of action, including, *inter alia*, a breach of fiduciary

duty and a violation under the faithless servant doctrine.  See Complaint (Nov. 8, 2019)

("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1.  Currently pending before

this Court, on a referral from the Honorable LaShann DeArcy Hall, is plaintiffs' January 14, 2020

motion for default judgment, see Referral Order (Jan. 15, 2020); Notice of Motion for Default

Judgment (Jan. 14, 2020), DE # 11; see also Plaintiffs' Memorandum of Law in Support of Their

Motion for Default Judgment (Jan. 14, 2020) ("Pl. Mem."), DE #12.  For the reasons that follow,

this Court respectfully recommends that plaintiffs' motion for default judgment be granted in part

and denied in part, and that plaintiffs be awarded damages as set forth below.

## BACKGROUND

Plaintiff Plaza Motors is a New York State corporation with its principal place of business in Brooklyn, New York.  See Declaration of [General Manager] Adam Rosatti in Support of Plaintiffs' Motion for Default Judgment (Jan. 14, 2020) ("Rosatti Decl.") ¶ 3, DE #13.   Beginning on October 22, 2018, Plaza Motors employed defendant Orlando Rivera, a resident of the state of New Jersey, as a Parts Manager at multiple Brooklyn-based automotive dealerships, including plaintiffs Plaza Kia, Plaza Toyota, and Acura of Brooklyn.[1]   See Compl. ¶¶ 12-13; Rosatti Decl. ¶ 7.[2]   As a Parts Manager, Rivera's job duties included overseeing/managing parts department employees; policy management of parts inventory and stocking; and processing invoices, sales credit memos, customer refunds, and "obsolesce returns."   See Compl. ¶ 18.   Defendant was ultimately terminated from his employment on October 14, 2019, when he was arrested and charged with petit larceny and criminal possession of stolen property in the fifth degree.   See id. ¶¶ 23, 27.   Between March 2019, when (according to the Complaint) Rivera began engaging in the purportedly unlawful behavior at issue in this suit, and October 14, 2019, the date of Rivera's termination and arrest, defendant was paid in excess of $84,000.00 in W-2 wages (including commissions), and received other employment benefits from Plaza Motors.   See id. ¶ 20.

Specifically, plaintiffs aver that Rivera engaged in a series of fraudulent schemes in which he stole approximately $196,000.00 from plaintiffs.   The Complaint describes defendant's conduct at the three dealerships as follows:

---

[1] For the purposes of this report and recommendation, the Court refers to the three automotive dealership plaintiffs – Plaza Kia, Acura of Brooklyn, and Plaza Toyota – as "the three dealerships."

[2] The Rosatti Declaration erroneously refers to Plaza Kia, Plaza Toyota, and Acura of Brooklyn as defendants, rather than plaintiffs.   See Rosatti Decl. ¶¶ 4-6.

### A.  Acura of Brooklyn

Beginning in the end of March of 2019 through October 14, 2019, defendant engaged in a scheme to steal cash payments made to Acura of Brooklyn by outside repair shops and body shops in exchange for parts.  See Compl. ¶ 23.   As set forth in the Complaint, delivery drivers employed by plaintiffs provided Rivera with cash payments that the delivery drivers had received in exchange for parts that were received from outside repair shops and body shops.  See id. ¶ 24. Rivera, in turn, "created credit memos on which he 'reversed' the sales tickets for such orders, thereby making it appear that the sales never occurred."  Id.  Plaintiffs aver that the amount of cash payments stolen from Acura of Brooklyn as a result of this scheme totaled at least $46,000.00. See id. ¶ 25.

### B.  Plaza Kia

According to the Complaint, in early 2019, defendant and his supervisors discussed the potential sale of obsolete parts from the parts departments managed by Rivera to a wholesale liquidator for about 40 to 50 percent of their value.  See Compl. ¶ 30.  Beginning in or around March 2019, Rivera, although never authorized to engage in such sales, sold obsolete parts from Plaza Kia for approximately 10 to 15 percent of their value, and provided free shipping to his customers.  See id. ¶¶ 31-32.   Defendant concealed his conduct from plaintiffs, and never advised any of his superiors of his actions.  See id. ¶ 33.  Plaintiffs aver that Plaza Kia was damaged in the amount of approximately $100,000.00, consisting of an 85 to 90 percent loss in value of parts sold due to the unauthorized discount provided to customers by Rivera, plus shipping costs.  See id. ¶ 35.

### C.  Plaza Toyota

Beginning in or around March 2019, defendant also engaged in a scheme in which he sold parts from Plaza Toyota, keeping all proceeds from these sales for his personal use.   See Compl. ¶ 39.   Plaintiffs discovered defendant's behavior when they conducted an audit of Plaza Toyota's inventory following Rivera's October 14th termination and arrest for his involvement in other schemes to defraud plaintiffs.   See id. ¶ 42.   The parts that Rivera sold were worth approximately $50,000.00.   See id. ¶ 40.

In addition to the aforementioned damages incurred by each of the three dealerships due to the various schemes described herein, the Complaint notes that Plaza Motors was damaged in the amount of at least $84,000.00, representing "all compensation and benefits paid to [d]efendant during the period of his disloyalty[,]" id. ¶¶  26, 36, 44, and that plaintiffs "conducted inventories of their parts departments that would not have otherwise been conducted[,]" at a cost of $8,575.00 for an audit of the parts department of Acura of Brooklyn, and $5,655.00 for a joint audit of Plaza Kia and Plaza Toyota, see id. ¶ 45.

### PROCEDURAL HISTORY

Plaintiffs commenced this action on November 8, 2019.   See Compl.   Rivera was timely served with process on November 23, 2019, see Ex. A to Declaration of Jamie S. Felsen in Support of Plaintiffs' Request for Certificate of Default (Affidavit of Service) (Dec. 20, 2019) ("Aff. of Serv."), DE #9-2, and, after he failed to file an answer, the Clerk of the Court issued an Entry of Default on December 30, 2019, see Entry of Default (Dec. 30, 2019), DE #10.   On January 14, 2020, plaintiffs moved for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure (the "FRCP"), see Notice of Motion for Default Judgment, and the following day, Judge

4

DeArcy Hall referred the pending motion to the undersigned magistrate judge for preparation of a report and recommendation, see Referral Order.   This Court issued a scheduling order on March 17, 2020, noting that the Court had identified deficiencies with respect to damages that warranted supplementation of plaintiffs' moving papers.   See Scheduling Order (Mar. 17, 2020) ("3/12/20 Order"), DE #16.   Plaintiffs filed their supplemental papers on May 12, 2020.   See Supplemental Declaration of Adam Rosatti in Support of Plaintiffs' Motion for Default Judgment (May 12, 2020) ("Supp. Rosatti Decl."), DE #19 (with attached exhibits).   As of the date of this opinion, defendant has neither responded to the Complaint nor otherwise appeared in this action.

## DISCUSSION

After the Clerk of the Court enters a Certificate of Default, the District Court may, on application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action.   See Fed. R. Civ. P. 55(a)-(b); see also S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(a)-(b).   "A defendant's default is an admission of all well-pleaded factual allegations in the complaint except those relating to damages."   Lyons P'ship, L.P. v. D & L Amusement & Ent., Inc., 702 F.Supp.2d 104, 111 (E.D.N.Y. 2010) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)); see also Fed. R. Civ. P. 8(b)(6).   The plaintiff bears the burden of establishing damages, see Greyhound Exhibitgroup, 973 F.2d at 158, which the court must "ascertain . . . with reasonable certainty[,]" Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), either by evaluating affidavits or documentary evidence, see Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989), or, in its discretion, by holding an evidentiary hearing, see, e.g., Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991).

## I.    Sufficiency of Service

"A default judgment is ordinarily justified where a defendant fails to respond to the complaint."   SEC v. Anticevic, No. 05 CV 6691(KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009) (citing, *inter alia*, Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984)). Nevertheless, before entering a default judgment, the Court should confirm that defendant was duly served and notified of the lawsuit.   See LG Capital Funding, LLC v. Volt Solar Sys., 15 Civ. 1404 (KAM) (VMS), 2016 WL 11447845, at *4 (E.D.N.Y. Aug. 15, 2016), adopted, 2016 WL 4718014 (E.D.N.Y. Sept. 9, 2016).

Pursuant to Rule 4(e) of the FRCP, service on an individual may be effected by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Here, service of Rivera appears proper pursuant to Rule 4(e)(2)(B).   On December 20, 2019, plaintiffs filed an Affidavit of Service as an attachment to their request for a certificate of default.   That document affirms that on November 23, 2019, a copy of the summons and Complaint were served on "Georgino Rivera," an individual listed as "[h]ousehold [m]ember/[s]on" at "the [defendant's] usual place of [a]bode": 133 Fernwood Terrace, Linden, New Jersey 07306.   See Aff. of Serv.; see also Declaration of Jamie S. Felson in Support of Plaintiffs' Request for Certificate of Default (Dec. 20, 2019) ¶ 4, DE #9-1 (noting that defendant

resides at the address listed above).[3]   In light of the information provided in this affidavit, the undersigned magistrate judge finds that plaintiffs properly served Rivera with the summons and Complaint.

## II.    Liability

If a defendant defaults and the plaintiff moves for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]"   Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citation omitted).   Additionally, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability[.]"   Greyhound Exhibitgroup, 973 F.2d at 158; see Morales v. B&M Gen. Renovation Inc., 14-cv-7290 (MKB) (MDG), 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), adopted, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." LaBarbera v. ASTC Labs, Inc., 752 F.Supp.2d 263, 270 (E.D.N.Y. 2010) (citation and internal quotation marks omitted); see also 10A Charles A. Wright et al., Federal Practice & Procedure: Civil § 2688.1 (3d ed. 2017) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.").   In other words, since the defaulting defendant has not admitted any legal conclusions, the plaintiff "must establish … that

---

[3] Rule 4(e)(2)(B) requires that a copy of the summons and Complaint be left with someone of "suitable age."   Fed. R. Civ. P. 4(e)(2)(B).   Because the affidavit of service states that Georgino Rivera appeared to be 18 years old, see Aff. of Serv. (describing the perceived age and physical appearance of the person served), this Court concludes that this requirement was also satisfied.

on the law it is entitled to the relief it seeks, given the facts as established by the default."  Finkel v. Triple A Grp., Inc., 708 F.Supp.2d 277, 280 (E.D.N.Y. 2010) (citation omitted); see Lyons P'ship, 702 F.Supp.2d at 111.  If the elements of the claim are established by the complaint's factual allegations, the defendant's default establishes its liability.  See Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973).

The Complaint in this case contains ten separate causes of action: (1) breach of fiduciary duty; (2) breach of duty of loyalty; (3) violation under the faithless servant doctrine; (4) fraud by nondisclosure; (5) fraud and deceit; (6) fraudulent concealment; (7) promissory estoppel; (8) unjust enrichment; (9) money had and received; and (10) conversion.  See generally Compl.  The Court first turns to the breach of fiduciary duty and faithless servant causes of action.

### A.  Breach of Fiduciary Duty / Faithless Servant Doctrine Causes of Action

#### 1.  General Principles

As an initial matter, plaintiffs assert two causes of action that appear to be related: a claim for breach of fiduciary duty (plaintiffs' first cause of action), see Compl. ¶¶ 47-51, and a claim pursuant to the faithless servant doctrine (plaintiffs' third cause of action), see id. ¶¶ 57-63.[4] Before turning to the merits of each of these claims, this Court must first determine whether these two claims are duplicative of one another, and therefore, whether one should be dismissed on that basis.

"A court may dismiss a claim as duplicative if relying on the same alleged acts, the claim

---

[4]  Plaintiffs correctly note in their moving papers that the statute of limitations for both causes of action is three years when a plaintiff seeks monetary relief.  See Pl. Mem. at 6 (citing cases); see also Sotheby's Fin. Servs., Inc. v. Baran, 107 F.App'x 235, 238 (2d Cir. 2004).  Because plaintiffs commenced this suit in November 2019, and Rivera's purported misconduct occurred between March 2019 and October 2019, these claims are timely.

simply seeks the same damages or other relief already claimed in a companion cause of action." Supreme Showroom Inc. v. Branded Apparel Grp. LLC, 16 Civ. 5211 (PAE), 2018 WL 3148357, at *12 n.14 (S.D.N.Y. June 27, 2018) (internal quotation marks and citation omitted).   A breach of fiduciary duty is a common law tort claim that allows an injured party in an agency relationship to recover for that agent's misconduct, and is not enforceable unless and until damages are sustained.   Cf. Murphy v. Morlitz, 751 F. App'x 28, 30 (2d Cir. 2018) (citation omitted); Helios Int'l S.A.R.L. v. Cantamessa USA, Inc., No. 12 Civ. 8205, 2013 WL 3943267, at *11 (S.D.N.Y. July 31, 2013).   By contrast, the faithless servant doctrine functions as an alternative cause of action that is designed to compensate a principal for the faithless actions of his agent, even when the principal has suffered no injury.   See generally Webb v. RLR Assocs., Ltd., No. 03 Civ. 4275(HB), 2004 WL 555699, at *2 (S.D.N.Y. Mar. 19, 2004).

Here, while both claims rely on the same sets of facts – Rivera's conduct at the three dealerships between March and October 2019 – plaintiffs seek additional relief pursuant to the faithless servant doctrine in the form of "the return of all wages, bonuses and other compensation paid to [d]efendant during the period he was faithless[.]"   Compl. ¶ 63; see also Pl. Mem. at 7 (arguing that New York's strict application of the faithless servant doctrine "mandates the forfeiture of all compensation . . . where . . . one who owes a duty of fidelity to a principal is faithless in the performance of his services.") (citation omitted).   Accordingly, for the purposes of this default judgment opinion, this Court finds that plaintiffs' first and third causes of action are distinct, and must be analyzed separately.   See Haraden Motorcar Corp. v. Bonarrigo, 19-cv-01079 (BKS)(DJS), 2020 WL 1915125, at *12 (N.D.N.Y. Apr. 20, 2020) (opining that the same two causes of action were not duplicative because the potential damages under each were

distinct).[5]   The Court must now address each of these causes of action.

### 2. Breach of Fiduciary Duty

This Court turns first to plaintiffs' claim for breach of fiduciary duty.   See Compl. ¶¶ 47-51.   Pursuant to New York law, a claim for breach of fiduciary duty requires: "(1) the existence of a fiduciary duty between plaintiff and defendant[;] (2) the breach of that duty by defendant[;] and (3) damages as a result of the breach."   First Nat'l Bank of Ariz. v. Nat'l Lending Corp., No. 06 CV 2768(ARR), 2011 WL 1315998, at *9 (E.D.N.Y. Mar. 14, 2011) (citing, inter alia, Whitney v. Citibank, N.A., 782 F.2d 1106, 1115 (2d Cir. 1986)), adopted, 2011 WL 1253659 (E.D.N.Y. Mar. 31, 2011).   One type of fiduciary relationship arises in the employment context, see Nicholsen v. Feeding Tree Style, Inc., 2014 WL 476355, at *4 (S.D.N.Y. Feb. 6, 2014);see also Fairfield Fin. Mortg. Grp., Inc. v. Luca, 584 F.Supp.2d 479, 485 (E.D.N.Y. 2008) ("New York law establishes that an employee-employer relationship is fiduciary.") (citing cases), with the employee prohibited from acting in any manner inconsistent with his agency or trust and bound to exercise the utmost good faith and loyalty in the performance of his duties, see Cumis Ins. Soc'y, Inc. v. LaPierre, No. 6:12-CV-1070 (FJS)(ATB), 2013 WL 1437742, at *3 (N.D.N.Y. Apr. 8,

---

[5] In their pleading, plaintiffs also assert a claim for breach of duty of loyalty.   See Compl. ¶¶ 52-56 (plaintiffs' second cause of action).   But because "[t]he duty of loyalty encompasses one subset of the many duties that a fiduciary owes to his agent[,]" plaintiffs' allegation that Rivera "breached a duty of loyalty is [ ] duplicative of their claim that he breached a fiduciary duty" and should be dismissed for that reason.   See Nicholsen v. Feeding Tree Style, Inc., No. 12 Civ. 6236(JPO), 2014 WL 476355, at *4 (S.D.N.Y. Feb. 6, 2014) (citing Restatement (Second) of Agency §§ 387-98 (Am. L. Inst. 1958)); see also Schanfield v. Sojitz Corp. of Am., 663 F.Supp.2d 305, 348 (S.D.N.Y. 2009) (observing that, in the employment context, a claim for "breach of the duty of loyalty in New York [is] sometimes referred to as the 'faithless servant doctrine'").

Relatedly, this second cause of action also seeks the disgorgement of Rivera's compensation between March and October 2019.   See Compl. ¶ 56.   However, plaintiffs' memorandum of law clarifies that the basis for recovering Rivera's compensation for this period of time is the faithless servant doctrine (plaintiffs' third cause of action), see Pl. Mem. at 7, and, in any event, fails to cite any authority for the proposition that disgorgement is an appropriate remedy for a violation of defendant's duty of loyalty.   For these reasons, the Court finds this claim to be wholly duplicative of the first and third causes of action.

2013) (citation and internal quotation omitted).

Here, the Complaint alleges that Rivera, while employed with Plaza Motors as a Parts Manager, and while assigned to work at the three automotive dealerships, engaged in a variety of schemes involving the conversion of cash and inventory belonging to plaintiffs.   Because, according to the pleading, Rivera was a managerial employee of Plaza Motors, and was placed in a position of trust and confidence, he owed his employer a duty to exercise good faith and loyalty in the performance of his employment responsibilities.   Rivera's behavior, which he hid from his superiors, violated those duties, causing plaintiffs significant monetary damages.   Accordingly, the Court concludes that plaintiffs have sufficiently alleged a claim for breach of fiduciary duty, and respectfully recommends that default judgment be granted with respect to this cause of action.

### 3.  Faithless Servant Doctrine

The Court next addresses plaintiffs' third cause of action, which alleges a violation pursuant to the faithless servant doctrine.  See Compl. ¶¶ 57-63.   To state such a claim in the employee-employer context, the employer plaintiff must show (1) that the employee's disloyal activity was related to the performance of his duties; and (2) that the disloyalty permeated the employee's service in its most material and substantial part.   See Schanfield v. Sojitz Corp. of Am., 663 F.Supp.2d 305, 348 (S.D.N.Y. 2009) (citation and internal quotation marks omitted). Pursuant to New York common law, "[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary."  Phansalkar v. Anderson Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003) (citing Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928 (1977)).   The Second Circuit has clarified that "misconduct by an employee that rises to the level of a breach of a duty of loyalty

11

or good faith is sufficient to warrant forfeiture"[;] by contrast, acts of disloyalty are not "substantial[,]" and therefore, do not qualify under this standard, if "the disloyalty consisted of a single act, or [if] the employer knew of and tolerated the behavior."  Phansalkar, 344 F.3d at 201-02.

Here, the Complaint describes Rivera as having been placed in a "position of trust[,]" while employed as a Parts Manager for plaintiffs, and memorializes his job duties as including the "management of parts inventory and stocking" as well as "processing invoices, . . . sales credit memos, [and] consumer refunds and . . . returns."  Compl. ¶¶ 2, 18.  Plaintiffs detail various disloyal acts committed by Rivera in his employment capacity between March and October 2019, including his creation of fraudulent "credit memos" so as to hide the sale of automotive parts, see id. ¶ 24 (describing defendant's misconduct at Acura of Brooklyn), his efforts to sell obsolete parts at discounted rates and with free shipping without the permission of his superiors, see id. ¶ 32 (identifying defendant's misconduct at Plaza Kia), as well as a scheme in which he sold parts from Plaza Toyota and kept the proceeds of such sales for his personal use, see id. ¶ 39 (noting defendant's misconduct with respect to Plaza Toyota).  The Complaint, read in its entirety, describes a pattern of repeated misbehavior by Rivera (rather than a single act), and nothing in the record suggests that plaintiffs knew of and tolerated defendant's actions, or that plaintiffs could have discovered his schemes through the exercise of ordinary diligence.  See generally id. ¶¶ 34, 42, 66 (describing how and when plaintiffs first learned of defendant's misconduct).

For these reasons, the Court concludes that plaintiffs have sufficiently asserted a cause of action for breach under the faithless servant doctrine.[6]

---

[6] Because this Court finds Rivera to be liable on plaintiffs' first and third claims, and since the entirety of the relief sought by plaintiffs can be awarded under these two causes of action, this Court need not assess

### III.    Damages

Though defendant, by defaulting, admits all well-pleaded allegations pertaining to liability, the Court has discretion to determine whether plaintiffs have substantiated their damages request. See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 189 (2d Cir. 2015).

### A.  Compensatory Damages

Plaintiffs seek to recover a total of $294,230.00 in compensatory damages, broken down as follows: (1) $84,000.00 in compensation paid to defendant by plaintiffs; (2) $46,000.00 in cash payments stolen from plaintiffs by Rivera; (3) $100,000.00 in loss of the value of parts sold due to the unauthorized discount provided to customers by defendant, plus shipping costs incurred in the shipment of such parts; (4) $50,000.00 for parts from Plaza Toyota that Rivera sold and for which he kept all proceeds of such sales for his personal use; (5) $8,575.00 for the cost of an audit of the parts department of Acura of Brooklyn; and (6) $5,655.00 for the cost of a joint audit of Plaza Kia and Plaza Toyota.   See generally Compl.; see also Pl. Mem. at 9; Declaration of Jamie S. Felsen, Esq. in Support of Plaintiffs' Motion for Default Judgment (Jan. 14, 2020) ("Felsen Decl.") ¶ 7, DE #14.

In response to this Court's March 17th scheduling order requiring plaintiffs to provide "documentary evidence supporting their various claims for damages[,]" 3/17/20 Scheduling Order, plaintiffs filed a supplemental declaration from Adam Rosatti, the General Manager of Plaza Motors and the three dealerships.   See Supp. Rosatti Decl.   Attached to this supplemental

---

Rivera's liability under the remaining claims.   See Trs. of Metal Polishers Local 8A-28A Funds v. Nu Look Inc. 18CV3816 (PKC)(RLM), 2019 WL 3500908, at *3 n.4 (E.D.N.Y. July 31, 2019) (citing Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2d Cir. 1997) ("A plaintiff seeking compensation for the same injury under different legal theories is of course entitled to only one recovery.")).

declaration are multiple exhibits purportedly showing the damages suffered by plaintiffs as a result of Rivera's misconduct.   These documents consist of an inventory audit summary for Acura of Brooklyn, see Ex. A to Supp. Rosatti Decl. (Inventory Audit Summary for Acura of Brooklyn), DE #19-1; various retail and accounting customer invoices from Plaza Kia, see Ex. B to Supp. Rosatti Decl. (Invoices for Plaza Kia), DE #19-2; an inventory audit summary for Plaza Toyota, see Ex. C to Supp. Rosatti Decl. (Inventory Audit Summary for Plaza Toyota), DE #19-3; and finally, a summary of Rivera's payroll from April 2019 until his termination in October 2019, see Ex. D to Supp. Rosatti Decl. (Payroll Records), DE #19-4.

### 1.  The Notice Requirement Pursuant to Rule 54(c) of the Federal Rules

Before recommending a monetary damage award, this Court must first determine whether the defaulting defendant had sufficient notice of the damages sought by plaintiffs pursuant to Rule 54(c) of the Federal Rules of Civil Procedure.   Under that rule, a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). According to the Second Circuit, "[b]y limiting damages to what is specified in the 'demand for judgment,' [Rule 54(c)] ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer." Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007).   In this case, plaintiffs failed to attach to their Complaint or either set of moving papers a proposed order describing the specific monetary sums they are attempting to recover, nor does the Complaint's *ad damnum* clause list concrete monetary amounts sought by plaintiffs. Nevertheless, these omissions are not fatal to plaintiffs' request for relief.

While "Rule 54(c) limits the damages recoverable by a plaintiff following a default

14

judgment to the type and quantity of damages demanded in the complaint, it does not require plaintiff to have demanded a sum certain in order to recover on default." Ames v. STAT Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y. 2005). The Complaint's *ad damnum* clause lists the different categories of damages that plaintiffs seek, and when read jointly with the body of the Complaint, this Court finds that Rivera – as the defaulting defendant – was on sufficient notice of the different kinds (and approximate amounts) of damages sought at the time he was served with the Complaint.[7]

### 2. Request for Disgorgement of Rivera's Compensation

Plaintiffs first ask that the Court award them the $84,000.00 that they paid Rivera in compensation between March 2019 and October 2019. See generally Compl. *ad damnum* clause (seeking damages including "repayment of all wages, bonuses[,] and other compensation paid to [d]efendant during the period of his disloyalty"); see also Pl. Mem. at 9 (stating that defendant is obligated to disgorge his compensation during this period). Plaintiffs contend that disgorgement is warranted insofar as "New York's strict application of the faithless servant doctrine mandates the forfeiture of all compensation . . . where . . . one who owes a duty of fidelity to a principal is faithless in the performance of his services." Pl. Mem. at 7 (citation omitted).

An employee who is found to be faithless ordinarily forfeits all compensation received during the period of disloyalty, regardless of whether the employer suffered any damages, see Morgan Stanley v. Skowron, 989 F.Supp.2d 356, 360 (S.D.N.Y. 2013) (citing cases), and regardless of whether the employee was salaried or was paid on commission, see Phansalkar, 344

---

[7] In the default judgment context, a plaintiff that identifies the types of damages sought in the complaint, and thereafter outlines the specific dollar amounts for those types of damages in its default judgment motion, satisfies Rule 54(c) and Silge and its progeny. See Pauta v. Aena Mech. Corp., No. 11-cv-6374, 2014 WL 3855025, at *2 (S.D.N.Y. July 25, 2014).

F.3d at 200.   The Second Circuit has, however, "carved out a limited exception [under the faithless servant doctrine] where compensation is expressly allocated among discrete tasks, such as commissions": "[I]n such cases, the employee may keep compensation derived from any transactions that were separate from and untainted by the disloyalty." Morgan Stanley, 989 F.Supp.2d at 360 & n.32 (citing cases); see also Shamrock Power Sales, LLC v. Scherer, 12 Civ. 8959 (KMK)(JCM), 2016 WL 7647597, at *10 (S.D.N.Y. Dec. 8, 2016) (citing cases), adopted, 2017 WL 57855 (S.D.N.Y. Jan. 4, 2017).   This doctrine, called apportionment, is available when:

> (1) the parties [ ] agreed that the agent will be paid on a task-by-task basis (e.g., a commission on each sale arranged by the agent), (2) the agent engaged in no misconduct at all with respect to certain tasks, and (3) the agent's disloyalty with respect to other tasks neither tainted nor interfered with the completion of the tasks as to which the agent was loyal.

Morgan Stanley, 989 F.Supp.2d at 360 (citation omitted).   By contrast, "[w]here an employee is paid a base salary as well as a performance bonus, which are linked to his performance but not to separate and discrete transactions[,] apportionment is not available." Shamrock, 2016 WL 76447597, at *10 (citation and internal quotation marks omitted). Here, plaintiffs are entitled to a disgorgement award, but, as explained below, they are not entitled to the full amount sought.

Per the Complaint, Plaza Motors paid Rivera in excess of $84,000.00 in W-2 wages (including commissions) between March 2019 and the middle of October 2019.   See Compl. ¶ 20. To substantiate the amount sought in their moving papers, plaintiffs' supplemental submission includes a payroll summary for defendant, which shows a series of payments from Plaza Motors to Rivera, via check, with dates ranging from April 5, 2019 until October 18, 2019.   See Payroll Summary.   As a preliminary matter, it is not clear how plaintiffs arrived at the forfeiture sum of $84,000.00 because the amount reflected on the payroll summary proffered to the Court totals

$84,376.46.  See id.  Moreover, that payroll summary includes a check dated October 15, 2019 for $5,564.10, with the notation "[t]o be voided[,]" but plaintiffs do not address whether the October 15th check was ultimately voided.  In light of this omission, and in order to avoid a potential windfall to plaintiffs, this Court does not include the October 15th payment (totaling $5,564.10) in its recommended award.

In addition, while the Complaint makes clear that Rivera derived at least a portion of his wages from commission, see Compl. ¶ 20, plaintiffs do not explain which payments were salary and which were commission.  Pursuant to the payroll summary records, Rivera received repeated weekly payments of $1,200.00 for the first three weeks of every month (e.g., April 5, 2019, April 12, 2019, April 19, 2019), see Payroll Summary, and weekly $2,000.00 payments for the last week of every month (e.g., April 26, 2019), see id.  Absent evidence to the contrary, and due to the repetitive nature of these payments, this Court presumes that these repeated payroll entries constitute Rivera's weekly wages, and not any commission, and concludes that plaintiffs should be permitted to recover these sums.

On the other hand, Rivera also received seven additional payments in varying amounts between April 12, 2019 and October 15, 2019, as follows:

| Check Date | Amount |
|------------|-----------|
| 4/12/2019 | $6,776.61 |
| 5/14/2019 | $6,807.26 |
| 6/13/2019 | $7,603.69 |
| 7/15/2019 | $7,072.07 |
| 8/15/2019 | $7,416.36 |

| | |
|---|---|
| 9/13/2019 | $5,936.37 |
| 10/15/2019 | $5,564.10 [may have been voided] |
| | **$47,174.46** |

See id.  The Court presumes that these payments constitute Rivera's monthly commissions, and does not include these figures as part of the recommended total forfeiture sum.

In light of the limited information proffered by plaintiffs, this Court is unable to assess whether Rivera was paid – at least partially – on a task-by-task basis (i.e., whether Rivera received a commission based on specific sales that he arranged), nor is it clear whether Rivera's misconduct extended to any of those discrete tasks (i.e., whether these individual sales were legitimate).   As plaintiffs thus have failed to sustain their burden with respect to these payments, this Court declines to include the $47,174.46 in its disgorgement award.   The Court respectfully recommends that plaintiffs be awarded $37,200.00 (the aggregate amount of the recurring $1,200 and $2,000 payments) as damages for a portion of the compensation paid by Plaza Motors to Rivera between March and mid-October 2019.[8]

### 3.  The Remaining Compensatory Damages Sought

Plaintiffs also request an additional compensatory award totaling $210,230.00.   See generally Compl. *ad damnum* clause (seeking damages including the "repayment of any money improperly received by [d]efendant, loss of goods stolen by [d]efendant, financial loss, loss of

---

[8] The March 17th Scheduling Order noted that the Court had identified certain deficiencies in connection with plaintiffs' various claims for damages and directed plaintiffs to provide supplemental documentary evidence to support those claims.   See 3/17/20 Order.   Having afforded plaintiffs the opportunity to supplement their request for damages, this Court does not recommend giving plaintiffs a proverbial third bite of the apple.

good will and reputation, constructive trust, [and compensatory] damages"); see also Pl. Mem. at 9 (requesting the amounts described herein). As set forth in plaintiffs' moving papers, the remaining amounts sought by plaintiffs consist of $46,000.00 in cash payments stolen from plaintiffs by Rivera; $100,000.00 in loss in the value of parts sold as a result of the unauthorized discount provided to customers by defendant, plus costs incurred in the shipment of such parts; $50,000.00 for parts from Plaza Toyota that Rivera sold and for which he kept all proceeds of such sales for his personal use; $8,575.00 for the cost of an audit of the parts department of Acura of Brooklyn; and $5,655.00 for the cost of a joint audit of Plaza Kia and Plaza Toyota. See Pl. Mem. at 9. Again, the Court recommends plaintiffs be awarded some, but not all, of these damages.

Turning first to the amounts representing the cash payments stolen by Rivera ($46,000.00), and the parts that Rivera sold without authorization ($50,000.00), the Court finds that plaintiffs proffered sufficient information to support the requested award of damages relating to these purported losses. In response to this Court's March 17th Scheduling Order, plaintiffs submitted: an inventory audit summary for the inventory audit conducted on October 29, 2019 for Acura of Brooklyn, which shows a parts department shortage of $46,247.32 as compared to the inventory list from March 2019, see Inventory Audit Summary for Acura of Brooklyn at ECF p. 5; and an inventory audit summary for the inventory audit conducted on October 31, 2019 for Plaza Toyota, which shows a parts department shortage of $51,593.38 for that same period of time, see Inventory Audit Summary for Plaza Toyota at ECF p. 5.[9] Because these inventory audits substantiate the purported parts shortages during the time period in question, this Court recommends that plaintiffs

---

[9] Although the October 31st inventory audit also shows a parts department shortage of $6,541.59 at Plaza Kia, see Ex. C. to Rosatti Supp. Decl. at ECF p. 5, plaintiffs, without explanation, do not seek to recover for any portion of the parts shortage at Plaza Kia.

be awarded the requested $96,000.000 in damages suffered as a result of Rivera's misconduct at Acura of Brooklyn and Plaza Kia.

With respect to the $100,000.00 sought by plaintiffs for the damages suffered by Plaza Kia, plaintiffs attach 106 pages of customer invoices detailing the costs and sales prices of parts sold to an entity called Dealermine Corporation ("Dealermine"). See Invoices for Plaza Kia. According to the Rosatti supplemental declaration, these invoices show that Rivera provided Dealermine with unauthorized discounts, plus reduced shipping costs, resulting in damages totaling $111,811.11. See Supp. Rosatti Decl. ¶ 4. Plaintiffs allege that this sum represents an 85 to 90 percent loss in value of parts sold by Rivera. See id.

Having closely reviewed these invoices, this Court concludes that plaintiffs have failed to provide adequate information to substantiate these alleged losses. For example, the customer invoices filed with the Court list each automotive part sold, provide a part number and a description of that part, and state the "LIST" and "NET" sums corresponding to those parts. See, e.g., Invoice No. 5683 at ECF p. 4. However, plaintiffs neither explain these designations, nor do they address whether the figures that appear under an adjacent "COST" column on these invoices constitute the total deficiency amounts alleged. See id. In addition, this Court is unable to determine (1) the unauthorized shipping discounts that Rivera is alleged to have provided to Dealermine Corporation, and (2) the total amount it would have cost to ship these parts absent any unsanctioned markdowns. Finally, plaintiffs fail to summarize the information contained in these invoices apart from providing the total purported deficiency amount in the Rosatti Supplemental Declaration ($111,811.11). Absent the necessary information from plaintiffs, this Court would need to aggregate each of the monetary figures corresponding to the sale of hundreds (or even thousands)

20

of parts, an extremely time-consuming endeavor that would likely prove futile without the additional data described herein, including an evidentiary showing as to how plaintiffs determined the value of "obsolete" parts.   Despite having been afforded the opportunity to supplement their initial submissions, plaintiffs have thus made an inadequate evidentiary showing to sustain an award for the damages purportedly suffered by Plaza Kia.

Finally, plaintiffs seek $14,230.00 in damages relating to the costs of the two October 2019 audits of the parts department of the three dealerships.   See, e.g., Pl. Mem. at 5.   While this Court does not doubt that these audits enabled plaintiffs to determine the damages caused by Rivera's misconduct, plaintiffs do not specify the legal basis upon which they believe these audit costs are recoverable, nor do they provide details describing how the cost of each was calculated.[10]   For these reasons, this Court recommends that plaintiffs' request to recover $14,230.00 in audit costs be denied.

## B.  Punitive Damages

Plaintiffs also ask that the Court award punitive damages totaling $1,500,00.00.   See Pl. Mem. at 12-14.   In support, plaintiffs argue that the "schemes engaged in by [d]efendant are the basis for various independent torts . . . includ[ing] breach of fiduciary duty" and that Rivera "engaged in various schemes to defraud [p]laintiff[s] out of nearly $300,000.00 and acted with complete disregard of [their] rights."   Id. at 14.   They also contend that Rivera's conduct implies

---

[10]  The invoice relating to each inventory audit appears on the last page of the respective exhibits.   See Inventory Audit Summary for Acura of Brooklyn; Inventory Audit Summary for Plaza Kia and Plaza Toyota.   Those invoices do not list the number of hours that were spent auditing the three dealerships, the number of inspectors that audited the dealerships, or the hourly rates charged by those inspectors.   See, e.g., Masino v. Tucci Equipment Rental Corp., No. 08-CV-898 (FB)(RML), 2008 WL 5451005, at *2 (E.D.N.Y. Nov. 20, 2008) (denying request for audit fees that was unsupported by breakdown of auditors' rates and hours expended), adopted, 2008 WL 5274342 (E.D.N.Y. Dec. 19, 2008).

"criminal indifference to civil obligations" insofar as he was "arrested and charged with petit larceny and criminal possession of stolen property in the fifth degree . . . for this conduct." Id. While plaintiffs have established the propriety of a punitive damages award, they have failed to demonstrate that the total sum sought is reasonable or commensurate with case law in this Circuit, and accordingly, this Court recommends a lower punitive damages award.

"An award of punitive damages is not a matter of right but is within the discretion of the trier of the facts[.]" Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) (citation omitted). "While New York law recognizes breach of fiduciary duty as an exception to the general rule that punitive damages are not recoverable for breach of contract claims, . . . this is only true so long as the very high threshold of moral culpability is satisfied." First Nat'l Bank of Arizona, 2011 WL 1315998, at *15 (citations and internal citation marks omitted). To that end, in order to sustain a claim for punitive damages in a tort action, one of the following must be shown: "intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the rights of another." Juniper Ent., Inc. v. Calderhead, No. 07-CV-2413 (ADS)(AKT), 2013 WL 120636, at *6 (E.D.N.Y. Jan. 9, 2013) (quoting Don Buchwald & Assocs., Inc. v. Rich, 723 N.Y.S.2d 8, 9 (1st Dep't 2001)).

In the instant case, the substantive evidence filed with plaintiffs' moving papers, including the information set forth in the Rosatti declaration, displays a level of wanton disregard by Rivera sufficient for an award of punitive damages. Plaintiffs provide compelling evidence that Rivera stole cash payments and automotive parts from the three dealerships, forged invoices, and provided unauthorized discounts to customers, and, in doing so, exhibited clear and deliberate wrongdoing. Plaintiffs also note that criminal charges were brought against Rivera for actions relating to the

facts described herein.    Cf. Dorn v. Berson, No. 09-CV-2717 (ADS)(AKT), 2012 WL 1004907,

at *7 (E.D.N.Y. Mar. 1, 2012) (declining to award punitive damages in the absence of criminal

charges brought against the individual defendant), adopted, 2012 WL 1004905 (E.D.N.Y. Mar.

23, 2012).

That said, the amount of punitive damages sought by plaintiffs ($1,500,000.00) is excessive

in light of the factual circumstances of this case.    Under New York law, the amount of punitive

damages awarded is a question left to the sound discretion of the trier of facts.    See Cont'l Indus.

Grp., Inc. v. Altunkilic, 14-CV-790 (AT)(JLC), 2020 WL 3884312, at *8 (S.D.N.Y. July 1, 2020)

(collecting cases).    There are, however, constitutional limits on an award of punitive damages,

and "courts must ensure that the measure of punishment is both reasonable and proportionate to

the amount of harm to the plaintiff and to the general damages recovered."    State Farm Mut. Auto

Ins. Co. v. Campbell, 538 U.S. 408, 426 (2003).

In support of a punitive damages award totaling $1,500,000.00, plaintiffs cite to a single

Second Circuit case, Aldrich v. Thomson McKinnon Securities, Inc., 756 F.2d 243, 248-49 (2d

Cir. 1985), and argue that an award of this magnitude is appropriate and not excessive in light of

the egregiousness of Rivera's conduct and as compared to punitive damage awards in other Second

Circuit cases.    See Pl. Mem. at 14.    But the facts of the Aldrich case, which is more than 35 years

old and predates the Supreme Court's decision in Campbell, are substantially different than those

in this action, and do not support an identically sized award.    Specifically, in Aldrich, the Second

Circuit reduced a punitive damages award of $3,000,000.00 to $1,500,000.00, but justified a

seven-figure award by noting that the misconduct in question harmed not only the plaintiff but also

other investors and the general public at large, and that the defendant was a sophisticated seller of

securities with over two billion dollars in assets and a $162 million net worth.  See 756 F.2d at 249.

Here, an award of similar magnitude would risk generating a windfall to plaintiffs and violating due process.  See generally Campbell, 538 U.S. at 425.  In determining the proper amount of punitive damages to award, this Court looks to Pure Power Boot Camp, a more recent case wherein the Honorable Theodore H. Katz awarded punitive damages against two disloyal employees of a physical fitness business in the amount of two times the forfeited salary awarded as compensatory damages for one employee, and an amount equal to the forfeited salary for another employee.  See 813 F.Supp.2d 489, 528 (S.D.N.Y. 2011).  Adopting the approach from that opinion, this Court respectfully recommends a punitive damage award totaling $74,400.00, or double the total amount of disgorged compensation that this Court recommends be awarded to plaintiffs ($37,200.00).

## C. Pre- and Post-Judgment Interest

Plaintiffs also seek an award of pre- and post-judgment interest.  See generally Compl. *ad damnum* clause (requesting "interest"); see also Pl. Mem. at 15.  With respect to pre-judgment interest, in a diversity case such as this one, the award of pre-judgment interest is a substantive issue governed by New York law.  See Gov't Employees Ins. Co. v. IAV Med. Supply, Inc., No. 11-CV-4261 (ARR)(RER), 2013 WL 764735, at *8 (E.D.N.Y. Feb. 8, 2013), adopted, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013).  According to Section 5001 of New York's Civil Practice Law and Rules, "[i]nterest shall be recovered upon a sum awarded . . . because of an act . . . depriving or otherwise interfering with title to, or possession or enjoyment of, property . . . ." N.Y. C.P.L.R. § 5001(a); see also Beeck v. Costa, 959 N.Y.S.2d 628, 642 (Sup. Ct. N.Y. Cnty. 2013) (holding

24

that "[t]he award of prejudgment interest in [a] case[] of . . . breach of fiduciary duty is proper where a defendant wrongly held a plaintiff's money").

As for the date by which plaintiffs' pre-judgment interest award should be calculated, New York law provides that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed, [but] [w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Although plaintiffs do not propose a specific starting date for the accrual of pre-judgment interest, their motion papers describe Rivera's misconduct as commencing "no later than the end of March 2019[,]" see Pl. Mem. at 2, 3, 4, and the first paycheck for which they seek disgorgement was issued on April 5, 2019, see Payroll Summary. An intermediate date between the end of March 2019 and the termination of Rivera's employment (and his arrest) on October 14, 2019, is July 7, 2019. Accordingly, this Court, in its discretion, recommends that pre-judgment interest be calculated from July 7, 2019, the midpoint between the approximate date marking the onset of defendant's misconduct and the date when his employment was terminated; pre-judgment interest should be calculated at the rate of nine percent per annum on the recommended compensatory damage award (that is, $133,200.00), through the date of entry of final judgment.

As to post-judgment interest, which is governed by federal statute, 28 U.S.C. § 1961(a), see Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008), "an award of post-judgment interest is mandatory," and is calculated at the statutory rate prescribed by 28 U.S.C. §1961(a), see MRC Indus., Inc. v. Global Therapy Sys., LLC, No. 06-CV-3633 (JS)(WDW), 2009 WL 2461106, at *4 (E.D.N.Y. Aug 7, 2009) (citing Schipani, 541 F.3d at 165). Therefore, this Court respectfully

recommends that plaintiffs be awarded post-judgment interest on their monetary award, to be calculated using the federal rate set forth in 28 U.S.C. § 1961(a), from the date the Clerk of the Court enters judgment in this action until the date of payment.

### D. Attorneys' Fees and Costs

Turning to attorneys' fees and costs, the Complaint seeks "[p]laintiffs' costs and reasonable attorneys' fees incurred in this action[.]"  Compl *ad damnum* clause § b.  However, plaintiffs' moving papers do not appear to seek fees or litigation costs: neither the memorandum of law submitted in support of plaintiffs' motion for default judgment, nor plaintiffs' supplemental submission on damages, includes any discussion of costs or fees or the legal basis for such an award.  See generally Pl. Mem; Rosatti Supp. Decl.  Based on the foregoing, and because plaintiffs have failed to submit a proposed order listing the relief sought in this action, this Court respectfully recommends that plaintiffs not be awarded fees and costs.

### CONCLUSION

For the foregoing reasons, this Court respectfully recommends that plaintiffs' motion for default judgment be granted in part and denied in part, and that plaintiffs be awarded damages as follows on their claims for breach of fiduciary duty and for faithless servant: (1) compensatory damages totaling $133,200.00, consisting of (i) $37,200.00 in disgorged compensation that was paid to Rivera between March and October 2019, and (ii) $96,000.00 in losses caused by Rivera's misconduct; (2) $74,400.00 in punitive damages; (3) pre-judgment interest at a rate of nine percent per annum on the compensatory damages awarded, to be calculated from July 7, 2019 through entry of final judgment; and (4) post-judgment interest pursuant to 28 U.S.C. § 1961(a).

Any objections to this Report and Recommendation must be filed with the Honorable

LaShann DeArcy Hall on or before **October 5, 2020**.   Failure to file timely objections may waive the right to appeal the District Court's order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

Plaintiffs are directed to transmit forthwith a copy of this Report and Recommendation to the defaulting defendant, via overnight Federal Express, at the following address, and file proof of service regarding the same:

Orlando Rivera
133 Fernwood Terrace
Linden, NJ 07306

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**September 17, 2020**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**